IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

United States of America )
                                            )
                                            )
                                            )
        v.                                  )    No. 18 CR 880
                                            )
                                            )
                                            )
Detonya Garrett                             )
                                            )
        Defendant.                          )

Memorandum Opinion and Order

The Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. __, 142 S.Ct. 2111 (2022), has prompted a flurry of motions by defendants charged with weapons offenses claiming that their charges are grounded in statutes that violate the Second Amendment's right to bear arms. Defendant has filed one such motion, arguing that Counts III and IV of his indictment, which charge him under 18 U.S.C. § 922(g)(1) with being a felon in possession of a firearm and under 18 U.S.C. § 924 (c)(1)(a) for possessing a firearm in furtherance of a drug trafficking crime, are facially unconstitutional. Because I conclude that neither *Bruen* nor the Court's previous Second Amendment jurisprudence as interpreted by the Seventh Circuit supports this argument, I deny the motion.

The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people

to keep and bear Arms, shall not be infringed." U.S. Const. Amend. II. *In District of Columbia v. Heller*, "the biggest Second Amendment case ever decided," and "the most extensive consideration of the Second Amendment by the Supreme Court in its history," *United States v. Skoien*, 614 F.3d 638, 647 (7th Cir. 2010) (Sykes, J., dissenting),[1] the Supreme Court identified the "core" of the Second Amendment as "the right of law-abiding, responsible citizens to use arms in defense of hearth and home," 554 U.S. 570, 634-35 (2008). The Court made clear, however, that "the right secured by the Second Amendment is not unlimited," *id*. at 626, and it took pains to admonish lower courts that "nothing in our opinion should be taken to cast doubt on the longstanding prohibitions on the possession of firearms by felons," *id*. at 626-27, a warning it reiterated in *McDonald v. City of Chicago, Ill*., 561 U.S. 742, 786 (2010) ("[w]e made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons[.]'").

Post-*Heller*, many courts of appeals, including the Seventh Circuit, developed a two-step test for evaluating Second Amendment challenges. *See,* e.g., *Kanter v. Barr*, 919 F.3d 437, 441 (7th Cir. 2019), *abrogated by Bruen*, 142 S. Ct. 2111 (2022). The threshold

---

[1] Quoting, respectively, Akhil Reed Amar, Heller, HLR, *and Holistic Legal Reasoning*, 122 Harv. L.Rev. 145, 147 (2008), and Sanford Levinson, *United States: Assessing Heller*, 7 Int'l J. Const. L. 316, 319 (2009).

question in this framework was "whether the regulated activity falls within the scope of the Second Amendment." *Id.* at 441. Then, "if the historical evidence is inconclusive or suggests that the regulated activity is *not* categorically unprotected," courts conducted "a second inquiry into the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights." *Id.* (citations omitted). In *Bruen*, the Supreme Court held that this two-step approach was "one step too many," 142 S. Ct. at 2127 (2022), and eschewed the use in the Second Amendment context of any "means-end test such as strict or intermediate scrutiny," *id.* at 2129. Instead, *Bruen* instructs courts to use the following standard to apply *Heller* faithfully: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Id.* at 2129-30 (internal quotation marks and citation omitted).

But the majority opinion in *Bruen*, which examined whether New York state could prohibit "law-abiding citizens" from carrying firearms for self-defense, does not address the "longstanding prohibitions on the possession of firearms by felons" that the *Heller* Court called "presumptively lawful." 554 U.S. at 627 n. 26. From its

opening sentence describing *Heller* and *McDonald* as recognizing "the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense," *id.*, at 2122, *Bruen*'s focus is on the framework for evaluating whether a challenged regulation places an unconstitutional burden on "a law-abiding citizen's right to armed self-defense." *Id.* at 2133. Indeed, the majority uses the phrase "law-abiding" to describe "the people" whose rights the Second Amendment guarantees no fewer than fourteen times. Meanwhile, Justice Kavanaugh's concurrence echoes the *Heller* and *McDonald* Courts' reassurances concerning the presumptive constitutionality of felon dispossession laws, *id.* at 2162, while Justice Alito's concurrence emphasizes the narrow scope of the Court's holding, which he characterizes as deciding only that "a State may not enforce a law...that effectively prevents its *law-abiding residents* from carrying a gun" for the purpose of self-defense, and "nothing about who may lawfully possess a firearm," *id* at 2157 (emphasis added).

Courts in this jurisdiction and elsewhere have relied on the focus in these opinions on the rights of "law-abiding" citizens to hold that the government may, consistently with *Bruen*, disqualify convicted felons from exercising the rights the Second Amendment guarantees. *See, e.g.*, *United States v. Coleman*, No. 3:22-CR-8-2, 2023 WL 122401, at *2 (N.D.W. Va. Jan. 6, 2023) ("[t]he Supreme Court notes throughout its decisions that the challenging parties are "law-abiding" citizens. The implication is clear: the reach of *Bruen* ends

at the feet of those individuals who are not law-abiding citizens.");
*United States v. Medrano*, No. 3:21-CR-39, 2023 WL 122650, at *2
(N.D.W. Va. Jan. 6, 2023) ("[t]he bottom line is Mr. Medrano's status
as a felon removes him from 'the people' enumerated in the Second
Amendment); *United States v. Seiwert*, No. 20 CR 443, 2022 WL 4534605,
at *1 (N.D. Ill. Sept. 28, 2022) (right defined in *Heller* "extends
only to 'the people,' which encompasses only 'law-abiding,
responsible' citizens who keep or bear arms for 'lawful purposes.'")
(quoting *Heller*, 554 U.S. at 635)); *United States v. Ingram,* No. CR
0:18-557-MGL-3, 2022 WL 3691350, at *3 (D.S.C. Aug. 25, 2022) ("[b]y
distinguishing non-law-abiding citizens from law-abiding ones, the
dicta in *Heller* and *McDonald* clarifies the bounds of the plain text
of the Second Amendment. This, coupled with the majority's focus in
*Bruen* on the Second Amendment rights of "law-abiding citizens"
throughout the opinion convinces this Court that the Supreme Court
would conclude that these statutes fail to infringe on any Second
Amendment rights").

Defendant's motion, filed on November 9, 2022, acknowledges
that courts in at least ten cases had rejected *Bruen* challenges to
the constitutionality of the statutes under which he is charged in
Counts III and/or IV. *See* Mot., ECF 131 at 5, n.1.[2] By the time the

---

[2] Defendant cites *United States v. Butts*, ---F. Supp. 3d---, No.
CR22-23-M-DW, 2022 WL 16553037 (D. Mont., Oct. 31,
2022)(§ 922(g)(1)); *United States v. Grant*, No. 3:22-161-MGL-1, 2022
WL 16541138 (D. S.C., Oct. 28, 2022); *United States v. Minter*, No.
3:22-CR-135, 2022 WL 10662252 (M.D. Pa., Oct. 18, 2022); *United*

government filed its response, this number had grown to at least fifty-eight. *See*, Gov't Resp., ECF 140 at 7-8, n.3 (citing cases). Indeed, if any decision has been issued in which the court reached a contrary conclusion, defendant has not cited it, nor has my own research uncovered it.[3]

Lacking any supporting authority directly on point, defendant relies almost exclusively on *United States v. Quiroz*, No. 22-CR-00104, 2022 WL 4352482 (W.D. Tex., September 19, 2022), which holds that § 922(n), which prohibits persons under felony indictment from obtaining a firearm, is unconstitutional under *Bruen*. *See also United States v. Holden*, No. 3:22-CR-30 RLM-MGG, 2022 WL 17103509, at *5 (N.D. Ind. Oct. 31, 2022) (same). But as the government observes, the very judge who decided *Quiroz* issued a pair of decisions just days later that offered a thorough analysis of the historical and

_____

*States v. Trinidad*, No. 21-398, 2022 WL 10067519 (D. P.R., Oct. 17, 2022); *United States v. Carrero*, No. 2:22-cr-00030, 2022 WL 9348792 (D. Utah, Oct. 14, 2022); *United States v. Price*, No. 2:22-cr-00097, 2022 WL 6968457 (S.D. W. Va., Oct. 12, 2022); *United States v. Charles*, No. 22-CR00154-DC, 2022 WL 4913900 (W.D. Tx., Oct. 3, 2022); *United States v. Coombes*, No. 22-CR-00189, 2022 WL 4367056 (N.D. Ok., Sept. 21, 2022); *United States v. Hill*, No. 21cr107 WHG, 2022 WL 4361917 (S.D. Ca., Sept. 20, 2022)

[3] The government's response relies, *inter alia*, on the Third Circuit's extensive historical analysis in *Range v. Att'y Gen. United States*, 53 F.4th 262 (3d Cir. 2022), reh'g en banc granted, opinion vacated sub nom. *Range v. Att'y Gen. United States of Am.*, No. 21-2835, 2023 WL 118469 (3d Cir. Jan. 6, 2023), which concluded that § 922(g)(1) is consistent with the text and history of the Second Amendment. *Id.* at 266. Because the body of case law supporting the government's position is substantial, *Range*'s vacatur does not alter my analysis or conclusion.

conceptual underpinnings of the Supreme Court's Second Amendment jurisprudence and concluded that § 922(g) is not unconstitutional under *Bruen*. *See United States v. Collette*, No. 22-cr-141, 2022 WL 4476790, at *1, *8 (W.D. Tex. Sept. 25, 2022) (finding § 922(g)(1) consistent with *Bruen*'s analysis of the Second Amendment because "this Nation has a 'longstanding' tradition of exercising its right— as a free society—to exclude from 'the people' those who squander their rights for crimes and violence"); *United States v. Charles*, No. 22-cr-154, 2022 WL 4913900, at *11 (W.D. Tex. Oct. 3, 2022) (same).

Nothing in defendant's submissions suggests that the Seventh Circuit takes a different view of the Supreme Court's jurisprudence or that its own cases compel a contrary conclusion. In *United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) (en banc), the Seventh Circuit observed that "statutory prohibitions on the possession of weapons by some persons are proper" and held that a law disqualifying domestic violence misdemeanants from firearms possession did not run afoul of *Heller*. *Id*. at 640. In *United States v. Williams*, 616 F.3d 685 (7th Cir. 2010), the court upheld a categorical ban on firearm possession by convicted felons. *Id*. at 692 (7th Cir. 2010). While it is true that dissenting opinions by Judge Sykes in *Skoien* and by then-Judge Barrett in *Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019), *abrogated by Bruen*, 142 S. Ct. at 2111, expressed doubt that history supports the categorical disqualification of felons convicted of

nonviolent offenses, these opinions do not control the outcome here. Moreover, as the government notes, the opinions lack the benefit of *Bruen*'s directive that the government must identify only "a well-established and representative historical analogue, not a historical twin." 142 S. Ct. at 2133 (2022). As noted above, the court followed this directive in *Collette* and *Charles* and concluded that:

> this Nation has a historical tradition of excluding felons and those who abuse their rights to commit violence from the rights and powers of 'the people.' Consistent with *Heller*'s definition, if groups have been categorically excluded under other constitutional provisions bestowing rights to 'the people,' logic demands that society could also exclude those groups under the Second Amendment.

*Charles*, 2022 WL 4913900, at *11. Defendant offers no support for his contrary view beyond the dissenting opinions in *Skoein* and *Kanter*, which are contrary to the controlling law of this circuit upholding the categorical felony firearms ban of § 922(g).

Fewer courts have examined the constitutionality, post-*Bruen*, of § 924(c)(1)(A) banning firearms possession in furtherance of a drug trafficking offense, but those that have done so have upheld the statute. *See*, e.g., *Ingram*, 2022 WL 3691350, at *3 (because § 924(c) "prohibits the use of firearms by non-law-abiding citizens for unlawful purposes, such conduct is also unprotected by the Second Amendment"); *United States v. Nevens*, No. CR 19-774-DMG, 2022 WL 17492196, at *2 (C.D. Cal. Aug. 15, 2022) (because convictions under § 924(c)(1)(A) "cannot include conviction of a 'law abiding' citizen," they do not implicate *Bruen* and *Heller*). *See also United*

States v. Love, No. 1:21-CR-42-HAB, 2022 WL 17829438, at *4 (N.D. Ind. Dec. 20, 2022) (denying *Bruen* challenge to sentencing enhancement for weapons possession "when it occurs in relation to a federal drug offense," noting that "*Bruen* is rife with historical observations that would exclude from Second Amendment protections individuals that carry firearms to facilitate crime."). Nothing in defendant's submissions persuades me to depart from the conclusions of these courts.

This leaves only defendant's request, as an alternative to dismissing Counts III and IV, that I appoint an "expert historian" to weigh in on the constitutionality of § 922(g) and § 924(c) in light of *Bruen*. This request is denied. While it is true that some district courts confronted with motions such as defendant's have engaged in "an original analysis of whether the Second Amendment's plain text covers the possession of a firearm by a felon, and if so, whether the Government has affirmatively demonstrated that § 922(g)(1) is consistent with this Nation's historical tradition of firearm regulation," others have found such analyses to be unnecessary or even improper given that *Bruen* "has already signaled the answer to this question." *United States v. Minter*, No. 3:22-CR-135, 2022 WL 10662252, at *4 (M.D. Pa. Oct. 18, 2022). *See also United States v. Young*, No. CR 22-054, 2022 WL 16829260, at *9 (W.D. Pa. Nov. 7, 2022) ("where *Bruen* did not overturn, abrogate, or otherwise suggest that the longstanding prohibitions identified in

*Heller*, including the prohibition of possession of firearms by felons, may no longer be lawful, this Court is bound by the Supreme Court's decision in *Heller*, its progeny, and the Third Circuit cases addressing the constitutionality of Section 922(g)(1)"). As discussed above, the Seventh Circuit's pre-*Bruen* caselaw holds that § 922(g) is not unconstitutional in light of *Heller* and *McDonald*, and *Bruen* does not disturb that conclusion. *See also Hatfield v. Barr*, 925 F.3d 950, 953 (7th Cir. 2019) (holding that non-violent felons can be categorically dispossessed of firearms consistently with the Second Amendment).

For the foregoing reasons, defendant's motion is denied.


**ENTER ORDER:**


_____
    **Elaine E. Bucklo**
United States District Judge

Dated: January 11, 2023

10